UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ACCESSORIES BIZ, INC.,

        Plaintiff,

    -against-

LINDA AND JAY KEANE, INC.,
d/b/a L. and J. ACCESSORIES,        05 Civ. 7398 (JES)

        Defendant.
----------------------------------X
LINDA AND JAY KEANE, INC.,        **MEMORANDUM OPINION**
d/b/a L. and J. ACCESSORIES,        **AND ORDER**

        Third-Party Plaintiff,

    -against-

MARYLAND CASUALTY COMPANY,

        Third-Party Defendant.
----------------------------------X

**SPRIZZO, D.J.:**

    Third-party plaintiff, Linda & Jay Keane, Inc. ("L&J" or "plaintiff") brings the above-captioned declaratory judgment against defendant, Maryland Casualty Company ("Maryland Casualty" or "defendant"), seeking a declaration that Maryland Casualty is required to defend and indemnify plaintiff in the action styled <u>Accessories Biz, Inc. v. Linda & Jay Keane, Inc.</u>, No. 05-7398 ("the underlying action"). Defendant moves for summary judgment. For the reasons the follow, defendant's Motion for Summary Judgment is granted.

**BACKGROUND**

I.  <u>The Underlying Action</u>

Accessories Biz, Inc. ("Accessories"), plaintiff in the underlying action, is in the business of the design, production, and wholesale sale of costume jewelry products and accessories, and L&J is a wholesaler of fashion jewelry accessories to retailers. Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 3. Pursuant to an agreement, Accessories developed fashion jewelry concepts and products for L&J's May 2005 Market. <u>Id</u>. ¶ 4. In April 2005, Accessories delivered 338 samples of fashion jewelry accessories to L&J (the "Samples"). <u>Id</u>. On April 28, 2005, Accessories provided L&J with a price list for the Samples. <u>Id</u>. L&J then produced a catalog entitled, "L&J Accessories, May 2005 Market Collection" ("the Catalog") containing photographs of these Samples. <u>Id</u>. L&J then delivered the Samples to its sales representatives who showed them to L&J's customers and exhibited them at its New York City showroom. <u>Id</u>.

On May 11, 2005, Accessories refused L&J's request to reduce the prices of the products and demanded that L&J return the Samples. <u>Id</u>. L&J responded that it would return the Samples as soon as possible, but L&J has not yet returned the Samples to Accessories. <u>Id</u>. Instead, Accessories alleges that L&J has taken orders from customers for products based on the Samples and has

2

contracted with other vendors to produce products based upon Accessories' designs and concepts.¹ Id.

On July 15, 2005, Accessories filed the underlying action, currently pending in this Court, against L&J. See Affirmation in Opposition of Matthew S. Aboulafia ("Aboulafia Aff."), Ex. C ("Accessories' Compl."). In its Complaint, Accessories asserts four causes of action against L&J. Count One alleges misappropriation and unfair competition; Count Two seeks a permanent injunction preventing L&J from using the Samples; Count Three alleges unjust enrichment; and Count Four seeks an immediate return of the Samples to Accessories. See Accessories' Compl. ¶¶ 28, 30, 32, 34.

II. The CGL Policy

It is undisputed that at the time of the aforedescribed incident, plaintiff had a commercial general liability insurance policy in effect issued by defendant, Policy No. PAS 36612191 (the "CGL Policy"). See Def.'s 56.1 ¶ 1; Aboulafia Aff., Exs. B, E, G. Under Section I, Coverage A, the CGL Policy provides coverage for property damage and states as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the

---

¹In the Catalog, each Sample is denominated with a specific product number known as an SKU. Def.'s 56.1 ¶ 3. In its Complaint, Accessories alleges that L&J has taken orders from customers for products with SKU numbers and descriptions matching SKU numbers that it assigned to the Samples. Id.

> right and duty to defend the insured against
> any "suit" seeking those damages . . . .
>
> b. This insurance applies to . . . "property
> damage" only if:
>
>> (1) The . . . "property damage" is caused
>> by an "occurrence" that takes place in
>> the "coverage territory"; . . .

Aboulafia Aff. Ex. B, §§ I.A.1., at M138-M139. The policy excludes coverage for "property damage expected or intended from the standpoint of the insured." Id. § I.A.2.a, at M139. In addition, the policy contains the following relevant definitions:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . . .
>
> 17. "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. § V, at M152-53. The policy does not define "accident." Furthermore, the CGL Policy makes clear that Maryland Casualty does not have a duty to defend the insured "against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." Id. § I.A.1.a, at M138. Under Section I, Coverage

4

B, the CGL Policy provides coverage for personal and advertising injury liability and states as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages . . . .
> . . . .
>
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Id. § I.B.1.a, at M143. The CGL Policy defines "personal and advertising injury" as an injury arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication of material that violates a person's right of privacy;
>
> f. Misappropriation of advertising ideas or style of doing business; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

5

Id. § V.14, at M152. The policy excludes coverage for "personal and advertising injury" that is "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Id. § I.B.2.a.1, at M143. Moreover, the CGL Policy states that Maryland Casualty does not have a duty to defend the insured "against any 'suit' seeking damages for . . . 'personal and advertising injury' to which this insurance does not apply." Id. §I.B.1.a, at M143.

In addition, the CGL Policy contains a Limitation of Coverage to Designated Premises or Project ("Designated Premises Endorsement") which provides in pertinent part that the insurance coverage applies only to "property damage" and "personal and advertising injury" arising out of:

> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
>
> 2. The project shown in the Schedule.

Aboulafia Aff., Ex. G, at M135. Since there is no premises or project shown in the Schedule, the Designated Premises Endorsement states that the designated premises is the address shown in the Declarations, which is 140 Candace Drive, Maitland, Florida. Id., Aboulafia Aff., Ex. H, at M125; Ex. G, at 135.

6

III. Commencement of this Action

Plaintiff notified defendant of the underlying action by sending it a copy of the Summons and Verified Complaint. Def.'s Notice of Mot. for Summ. J. ("Def.'s Notice of Mot."), Ex. D. By letter dated August 17, 2005, defendant denied coverage, indicating that it was not appropriate under the terms of Section I, Coverage A or Section I, Coverage B of the CGL Policy, and that coverage was excluded because of the Designated Premises Endorsement. Id. More specifically, defendant disclaimed coverage under Coverage A on the grounds that Accessories' Complaint against L&J did not allege "property damage" caused by an "occurrence" and the CGL Policy excludes coverage for expected or intended damages. Id. at M70. Defendant disclaimed coverage under Coverage B on the grounds that Accessories' Complaint against L&J did not allege an enumerated "personal and advertising injury" offense and the CGL Policy excludes coverage for "personal and advertising injury" when caused by or at the direction of the insured. Id. at M72-73. In addition, defendant denied coverage because the Designated Premises Endorsement limits coverage to L&J's Florida office whereas Accessories' Complaint alleges conduct involving L&J's premises in New York City. Id. at M75.

On September 18, 2005, plaintiff filed this declaratory judgment action seeking a declaration that it is entitled to insurance coverage under the CGL Policy for Accessories' claims

7

against it. Def.'s 56.1, ¶ 10. On November 30, 2006, defendant moved for summary judgment. See Def.'s Notice of Mot.

**DISCUSSION**

I. Standard of Review

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. See Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If no genuine issues as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323.

II. Duty to Defend and Insurance Policy Interpretation

An insurer's duty to defend is broader that its duty to indemnify and is determined by comparing the factual allegations of the underlying complaint to the policy language. See A. Meyers & Sons Corp. v. Zurich Am. Ins. Group, 545 N.E.2d 1206, 1208 (1989). The insurer must defend if the facts alleged raise a reasonable possibility that the action will be within the policy coverage. Id.

If, however, the factual allegations of the underlying complaint indicate that there is "no basis for recovery within the coverage of the policy . . . , [a court] may sustain [the insurer's] refusal to defend." See Allstate Ins. Co. v. Mugavero, 589 N.E.2d 365, 370 (1992).

Insurance policies are contracts to which the ordinary rules of contractual interpretation apply. The court must afford the unambiguous provisions of the policy their plain and ordinary meaning. If a provision is ambiguous, the court must interpret the language in context with regard to its "purpose and effect" in the policy and "the apparent intent of the parties." See Murray Oil Products v. Royal Exch. Assurance Co., 235 N.E.2d 762, 764 (1968). Furthermore, where a term in an insurance policy is not defined, it is appropriate to define the term as it ordinarily would be understood by laypersons. See Fantasia Accessories, Ltd. v. N. Assurance Co. of Am., No. 01 Civ. 0663, 2001 U.S. Dist. LEXIS 18865, at *9 (S.D.N.Y. Nov. 20, 2001). If the ambiguity remains unresolved, the court must then resolve it in favor of the insured. Id.

### III. Section I, Coverage A of the CGL Policy

Plaintiff first argues that Accessories' Complaint alleges "property damage" caused by an "occurrence" and is therefore covered under Coverage A of the CGL Policy. Aboulafia Aff. at 5-8. Under the CGL Policy, "property damage" includes either "physical

9

injury to tangible property" or "loss of use of tangible property that is not physically injured." Id., Ex. B, § V.17, at M153. The parties agree that L&J's failure to return the Samples to Accessories resulted in a "loss of use of tangible property" within the meaning of the CGL Policy. Aboulafia Aff. at 5-6; Reply Mem. of Law in Supp. of Third-Party Def.'s Mot. Summ. J. at 1. At issue is whether the property damage was caused by an "occurrence."

The CGL Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., Ex. B, § V.13, at M152. The term "accident" is not defined in the policy. L&J concedes that the underlying complaint alleges intentional acts, since L&J withheld the Samples from Accessories even after Accessories demanded their return. Aboulafia Aff. at 7; Accessories' Compl. ¶¶ 18-20, 27. L&J argues, however, that it did not expect that Accessories would be harmed or damaged as a result. Aboulafia Aff. at 6-7.

Although insurance policies normally cover the accidental consequences of intentional acts, the New York courts have recognized that there are some acts in which the alleged harm is an inherent result of the intentional acts. Progressive N. Ins. Co. v. Rafferty, 793 N.Y.S.2d 618, 619 (N.Y. App. Div. 3d Dep't 2005); Mugavero, 589 N.E.2d at 369-70. For some conduct, "cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence." Mugavero, 589 N.E.2d at 369.

10

In such cases, if the act is intentional, so is the harm, and the courts will not inquire into the perpetrator's subjective intent to cause the injury. Id., 589 N.E.2d at 369. Here, there is no dispute that L&J refused to return the Samples to Accessories after Accessories demanded their return. Aboulafia Aff. at 6-7. In its Complaint, Accessories alleges that as a result, it suffered economic loss in the amount of $250,000, the value of the Samples. Accessories' Compl. ¶¶ 28, 35. Even if L&J withheld the Samples from Accessories in order to create a profitable business agreement for both parties, L&J could have expected or anticipated that Accessories would suffer property damage because of this loss in value and the resulting inability to use those Samples to obtain business from other vendors. Such economic loss is an inherent result of L&J's refusal to return Accessories' Samples. Therefore, Accessories' Complaint does not allege and the facts do not demonstrate an "accident," and therefore there is no "occurrence" as required for coverage. Thus, Maryland Casualty properly disclaimed coverage under Coverage A of the CGL Policy.

Even assuming, *arguendo*, that a covered "property damage" was alleged, the "expected or intended" exclusion in the CGL Policy bars coverage. The exclusion states that "[t]his insurance does not apply to "'property damage' expected or intended from the standpoint of the insured." Aboulafia Aff. Ex. B, § I.A.2.a, at M139. As the underlying action in this case alleges only

11

intentional acts on the part of the plaintiff, this exclusion applies.

IV.  Section I, Coverage B of the CGL Policy

Plaintiff also argues that Accessories' Complaint alleges "personal and advertising injury" and is therefore covered under Coverage B of the CGL Policy. Aboulafia Aff. at 8-12.  The CGL Policy lists seven categories of covered harms that may constitute "personal and advertising injury," but the parties agree that only the provision encompassing "misappropriation of advertising ideas or style of doing business" is relevant in this case. Id. at 10; Mem. of Law in Support of Third-Party Def.'s Mot. for Summ. J. at 16.  Thus, the question presented is whether the claims in the underlying action constitute a "misappropriation of advertising ideas or style of doing business."

Since the CGL Policy does not define "advertising idea" or "style of doing business," it is appropriate to define these terms as they ordinarily would be understood by laypersons. See Fantasia Accessories, 2001 U.S. Dist. LEXIS 18865, at *9.  The phrase "advertising idea" relates to the manner in which one advertises its goods, and the phrase "style of doing business" refers to the manner or method in which a company operates. Id. at *12.  Here, Accessories' claims against L&J focus on L&J's failure to return its Samples and alleged sale of jewelry based on those Samples. See Accessories' Compl. ¶¶ 24-38.  The only reference to L&J's

12

advertising activities is to a catalog which contained photographs of the Samples. Id. ¶¶ 11-13. There are, however, no claimed injuries resulting from L&J's catalog or any other advertisement. Id. ¶¶ 24-38. Rather, Accessories claims that it is entitled to damages because of its loss of use of the Samples themselves. Id. Accessories' Complaint references a catalog merely as evidence that L&J was selling jewelry modeled after its Samples. Id. ¶¶ 11-13; see also A. Meyers & Sons Corp., 545 N.E.2d at 1209 (finding no claim for "advertising injury" when the plaintiff's price list which pictured the items was attached to the complaint as evidence that the defendant was selling the product made by the infringing process, not to make a claim of harm based on the use of the price list); Jerry Madison Enter., Inc. v. Grasant Mfg. Co., Inc., No. Civ. 2346, 1990 U.S. Dist. LEXIS 1649, at *10 (S.D.N.Y. Feb. 15, 1990) (stating that it was irrelevant whether plaintiff's brochures which contained photographs of its allegedly infringing earrings was advertising activity "because the complaint does not allege injury arising out of these brochures, but rather focuses on the infringing manufacture and sale of the jewelry"); cf. Ben Berger & Son, Inc. v. Am. Motorist Ins. Co., 1995 U.S. Dist. LEXIS 8976, No. 94 Civ. 3250, at *9 (S.D.N.Y. June 29, 1995) (finding misappropriation of advertising ideas and style of doing business because it was the designer's advertising of its similar products in its catalog, in which the designer's own products had previously

been advertised, that diluted plaintiff's distinctive trade dress and caused confusion as to the source of the products).

L&J argues that the Samples themselves are a form of advertising, but New York courts have routinely held that the phrase "advertising idea" does not include the product itself. See Fantasia Accessories, 2001 U.S. Dist. LEXIS 18865, at *14-15 (reasoning that the phrase "advertising idea" relates to the manner in which one advertises its goods, which is separate from the goods themselves); Hosel & Anderson, Inc. v. ZV II, Inc., No. 00 Civ. 6957, 2001 U.S. Dist. LEXIS 3216, at *7 (S.D.N.Y. Mar. 21, 2001) ("[t]he product itself is not an advertisement within the meaning of the policy"). Thus, the jewelry Samples, which relate to the product itself and their design, do not fall within the scope of "advertising idea."

Nor has Accessories alleged that L&J has misappropriated its "style of doing business." As stated above, the lay interpretation of "style of doing business" would be the manner or method in which a company operates. This would include how a company markets its goods, but the ordinary meaning of the words would not include the actual physical goods themselves. This is especially true in context; "style of doing business" appears in the same paragraph as "advertising idea" in a definition of "personal and advertising injury." The purpose is to define what promotional conduct is insured, not to provide products liability insurance.

14

For these reasons, the Court concludes that Accessories' Complaint does not allege a "personal and advertising injury" as defined by the CGL Policy. Thus, Maryland Casualty properly disclaimed coverage under Coverage B of the CGL Policy.

V. <u>Limitation of Coverage to Designated Premises or Project</u>

Even if Accessories' Complaint does allege "property damage" or "personal and advertising injury" within the meaning of the CGL Policy, L&J's claim is still barred under the Designated Premises Endorsement of the CGL Policy. The Designated Premises Endorsement provides that the insurance applies only to "property damage" and "personal and advertising injury" arising out of: (1) "the ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises;" or (2) "the project shown in the Schedule." Aboulafia Aff. Ex. G, at M135. Since there is no premises or project shown in the Schedule, the designated premises is the address listed in the Declarations, which is 140 Candace Drive, Maitland, Florida. <u>Id.</u>, Aboulafia Aff. Ex. H, at M125. L&J concedes that the allegations in this case do not arise out of L&J's use of the Florida designated premises, but rather that they arise out of its use of a New York City showroom. Aboulafia Aff. at 13. L&J argues, however, that its New York City showroom is an "operation necessary or incidental" to the operations conducted in the Florida office, and it is therefore covered under the CGL Policy. <u>Id</u>. In essence,

15

L&J argues that the language of the Designated Premises Endorsement is broad enough to encompass business-related activity occurring away from the designated Florida premises.

We find that the phrase "operations necessary or incidental to those premises" is not broad enough to include business-related activity necessary or incidental to L&J's business operations. The Designated Premises Endorsement is clearly a premises liability policy. Its purpose is to insure L&J against liability incident to its ownership, maintenance, or use of the listed premises and operations necessary or incidental to those premises.

If L&J's business-related activity conducted from a separate premises located in New York was deemed "necessary and incidental" to its designated Florida premises, such a conclusion would wholly eviscerate the limitation of coverage in the CGL Policy to specifically designated premises. Under plaintiff's theory, an insured with satellite offices could always claim that the operations conducted from those other non-designated offices were "necessary or incidental to" the operations conducted from the home office. Limiting the coverage to designated premises significantly reduces the premium charged because the insurer's exposure is significantly reduced. Expanding the coverage to include business-related activity occurring off-premises would significantly increase the insurer's risk to cover an exposure which was not intended and for which it did not receive a premium. Since L&J's

16

business-related activity that occurred in New York was not "necessary or incidental" to its Florida premises, Maryland Casualty also properly disclaimed coverage under the Designated Premises Endorsement of the CGL Policy.

In sum, the factual allegations of the underlying complaint indicate that there is no basis for recovery within the coverage of the CGL Policy. Therefore, defendant has no duty to defend or indemnify plaintiff in the underlying action.

## CONCLUSION

For the aforementioned reasons, this Court grants defendant's Motion for Summary Judgment.

It is **SO ORDERED**.

DATED:    New York, New York
          January 29, 2008

                                          _____
                                          John E. Sprizzo
                                          United States District Judge

17

**APPEARANCES**

LAW OFFICES OF MATTHEW S. ABOULAFIA
Attorneys for Defendant and Third-Party Plaintiff
Lincoln Building
60 East 42nd Street, Suite 2231
New York, New York 10165

    MATTHEW S. ABOULAFIA, ESQ.

    Of Counsel

MELITO & ADOLFSEN P.C.
Attorneys for Defendant
233 Broadway
New York, New York 10279

    IGNATIUS JOHN MELITO, ESQ.
    S. DWIGHT STEPHENS, ESQ.

    Of Counsel